UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT WASHINGTON, | Civil No. 14-7453 (KM) (JBC) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION** |
| ESSEX COUNTY SHERIFF'S DEPARTMENT et al., | |
| Defendants. | |

## I. INTRODUCTION

Plaintiff pro se, Robert Washington, filed a civil rights complaint with the Court on December 1, 2014. (DE 1.) Mr. Washington subsequently filed what was labeled an "Amended Complaint," an addendum which contained a prayer for damages. (DE 3.) After mail to Mr. Washington was returned as undeliverable, the Court administratively terminated the case on November 6, 2015. (DE 5, 6.) The case was reopened on April 28, 2016 (DE 8, 9), and then dismissed upon initial screening for failure to state a claim upon which relief could be granted (DE 18, 19). The Court subsequently granted a motion to amend the complaint. (DE 22, 23.) Mr. Washington thereafter submitted a second amended complaint (DE 24), and the Court now undertakes an initial screening of that pleading under 28 U.S.C. §§ 1915(e) and 1915A.

## II. BACKGROUND

Mr. Washington's original complaint named as defendants the Essex County Sheriff's Department, Detective James Bradley, Detective Noel Mendez, Detective Caicedo Fabian, Detective Eduardo Moreno, and Sergeant Nicolas Vinci. (DE 1-1; *see also* DE 3.) He alleged that Bradley arrested him on September 5, 2014 and filed a false police report "stating [Mr. Washington] was arrested with evidence that was clearly not on [his] person." (DE 1-1 at 4.) He

contended that the defendant detectives "came together and discussed possible methods of conjuring and manipulating the legal process to come up with trumped up charges, that evidence had to be planted to substantiate such a crime." (*Id.*) He thus alleged a conspiracy among the defendants. (*Id.*) Mr. Washington also alluded to medical problems that allegedly went untreated while he was detained. (*Id.*)

Upon screening the original pleading, I dismissed it without prejudice for failure to state a claim upon which relief could be granted. (DE 18.) Specifically, regarding the claim that Bradley filed a false police report, I found that Mr. Washington had not included sufficient factual detail and that "'the filing of a false police report is not itself a constitutional violation.'" (*Id.* at 3 (quoting *Ellis v. Vergara*, No. 09-2839, 2009 WL 4891762, at *5 (D.N.J. Dec. 15, 2009)).) I found that Mr. Washington had failed to state a claim for malicious prosecution, as he did not plead favorable termination of criminal proceedings. (*Id.* at 4.) I dismissed the conspiracy allegation as it was conclusory and as there was no adequately pleaded predicate constitutional violation. (*Id.* at 5.) I additionally dismissed any potential claim for inadequate medical treatment and any claim against the Essex County Sheriff's Department as insufficiently pleaded. (*Id.* at 6–8.) I declined to exercise supplemental jurisdiction over any potential state-law claims. (*Id.* at 8.)

Mr. Washington has now submitted a second amended complaint against the same defendants, alleging similar claims.[1] (DE 24, cited herein as "2AC".) He again alleges that Bradley arrested him and "filed a false police report stating I was arrested with evidence that was clearly not on my person." (2AC ¶ 5.) As in the original pleading, Mr. Washington contends that

---

[1] Mr. Washington has not signed his second amended complaint. Federal Rule of Civil Procedure 11 requires that "[e]very pleading . . . must be signed by at least one attorney of record . . . or by a party personally if the party is unrepresented." Fed. R. Civ. P. 11(a). "The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention." *Id.* I set aside this technical defect for purposes of screening. The issue is moot, because, as detailed herein, I will dismiss the second amended complaint because it fails to state a claim.

2

the defendant detectives "came together and discussed possible methods of conjuring and manipulating the legal process to come up with false charges that evidence had to be planted to substantiate such a crime." (*Id.* ¶ 6.) More specifically, Mr. Washington alleges that the defendant detectives "tampered with evidence to file false claims that I sold one bag of heroin . . . for $10." (*Id.*) He urges that the police "never recovered $10" and that this interaction was, anyway, "impossible being heroin doesn't cost $10 in Newark." (*Id.*) He contends that the defendants falsely manipulated police reports and failed to report this misconduct. (*Id.*) Mr. Washington indicates that, "[d]ue to [his] prior record [he] was forced to take a probationary term in order for [him] to be released from these charges." (*Id.*) The Court now undertakes a screening of the second amended complaint under 28 U.S.C. §§ 1915(e) and 1915A.

## III. LEGAL STANDARDS

Under the Prison Litigation Reform Act, Pub. L. 104-134, §§ 801–810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) ("PLRA"), district courts must review prisoner complaints when the prisoner (1) is proceeding *in forma pauperis*, see 28 U.S.C. § 1915(e)(2)(B), (2) seeks redress against a governmental employee or entity, see 28 U.S.C. § 1915A, or (3) asserts a claim concerning prison conditions, see 42 U.S.C. § 1997e(c). The PLRA directs district courts to sua sponte dismiss claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012); *see also Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. §

3

1915A(b)). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To survive the Court's screening for failure to state a claim, the complaint must allege "sufficient factual matter to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Pro se pleadings, as always, will be liberally construed. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Glunk v. Noone*, 689 F. App'x 137, 139 (3d Cir. 2017). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

## IV. ANALYSIS

While Mr. Washington has expanded somewhat upon his original allegations, he has simply repeated most of them, and has failed to correct the defects that resulted in the prior dismissal. I will not repeat the reasoning of my prior Opinion (DE 18), which is incorporated by reference. I supplement the discussion as follows.

The second amended complaint contains five counts.

In Count V, the second amended complaint asserts a constitutional claim based on Mr. Washington's fundamental allegation: that the officers filed a police report containing false statements about the evidence against him. As established in my earlier opinion (DE 18), the mere making of a false statement in a police report—standing alone—does not make out a constitutional claim. *See Ellis*, 2009 WL 4891762 at *5; *Jarrett v. Township of Bensalem*, 312 F. App'x 505, 507 (3d Cir. 2009). It may be a component of a malicious prosecution claim, but that claim, for separate reasons, will be dismissed. *See infra.*[2]

---

[2] The overall factual claim, by the way, seems to be that Mr. Washington was not selling but rather buying drugs, and that the $10 representing the purchase price was not in his possession when he was arrested (which, he implies, should have been the case if he had sold the drugs). (*See* 2AC ¶ 6) In a formal complaint filed against the detectives, attached to the original complaint, Mr. Washington seems to admit that he was buying drugs at the time. (*See* DE 1-1 at 10 ("I traveled from Morris County with three witnesses who can testify as to why, how much and where we were going to buy drugs. How much money and all relating to purchasing drugs and/or contraband, paraphernalia to ingest drugs were purchased at corner store on camera. These are hardly an act of a dealer.")) It is perhaps for this reason that the complaint does not assert a claim of false arrest as such.

5

In Count I, Mr. Washington alleges that the defendants "deprived [him] of his right to freedom from the use of official misconduct without due process of law." This claim seems to rest on the allegations that the claimed evidence was not actually on his person, and that the charges were trumped up and false. (2AC ¶¶ 5, 6) I interpret this portion of Count I as a § 1983 claim of malicious prosecution.[3]

In connection with the original complaint, I noted that a constitutional malicious prosecution claim has five essential elements:

> (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Woodyard v. County of Essex*, 514 F. App'x 177, 182 (3d Cir. 2013). I dismissed the malicious prosecution claim in the original complaint because it failed to allege "that the criminal proceedings ended in [Mr. Washington's] favor." (DE 18 at 4) The second amended complaint does not remedy this deficiency, because it, too, fails to allege that the criminal proceedings ended in Washington's favor. To the contrary, Mr. Washington alleges that he "was force[d] to take a probationary term in order for me to be released from these charges," an allegation which necessarily implies that the resulting criminal proceedings did *not* terminate in his favor. *See Kossler v. Crisanti*, 564 F.3d 181, 187 (3d Cir. 2009) ("[A] prior criminal case must have been

---

[3] I do not construe the second amended complaint as alleging a claim based upon a defendant's having been "convicted at trial at which the prosecution has used fabricated evidence." *Halsey v. Pfeiffer*, 750 F.3d 273, 294–95 (3d Cir. 2014). Mr. Washington has not alleged that the purportedly false police report was used as evidence or would have affected a trial verdict, or even that he went to trial at all.

6

disposed of in a way that indicates the innocence of the accused in order to satisfy the favorable termination element.").[4]

In Count I, the second amended complaint also alleges that the defendants "either actively participated in the excessive force or were accomplices." The reference to "excessive force" lacks any supporting factual allegations that would meet the *Twombly/Iqbal* pleading standard. There are no factual allegations about the circumstances of the arrest. The only allegation relating to force is a passing statement that a detective "beat and arrested me." (*See* 2AC ¶¶ 5, 9). That is insufficient to state a claim of force that was excessive under the circumstances.[5] I note also that Mr. Washington refers to "running away from the scene" (2AC ¶ 6), and that the original complaint's allegations of untreated medical conditions have been dropped (DE 1-1 at 4.)

---

[4] Although Mr. Washington is in custody, the implication is that he is incarcerated on other charges. The conviction that is the subject of this action, he says, has caused him to be classified as a "max custody inmate," enhanced his criminal record, and possibly exposed him to more jail time on the other charge, in addition to portraying him as a liar. (2AC ¶ 6; DE 1-1 at 4)

[5] The use of force in connection with an arrest, as such, is not unconstitutional. The relevant inquiry is whether the force applied by the police was objectively "excessive": *i.e.*, "whether the officer's actions [were] 'objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989) (citations omitted). The Court of Appeals has elaborated, enumerating some relevant considerations:

> In deciding whether challenged conduct constitutes excessive force, a court must determine the objective 'reasonableness' of the challenge conduct, considering "'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Carswell*, 381 F.3d at 240 (quoting *Graham*, 490 U.S. at 396). Other factors include "the duration of the [officer's] action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997). In evaluating reasonableness, the court must take into consideration the fact that "police officers are often faced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force necessary in a particular situation." *Graham*, 490 U.S. at 397. Thus, the court should not apply "the 20/20 vision of hindsight," but should instead consider the "perspective of a reasonable officer on the scene." *Id.* at 396.

*Couden v. Duffy*, 446 F.3d 483, 496–97 (3d Cir. 2006).

7

In Count II, Mr. Washington attempts to assert a claim for supervisory liability against the Essex County Sheriff's Department. (2AC ¶¶ 11–13) Under that theory, a person who has final policy-making authority may be liable under § 1983 if that person establishes a formal or *de facto* policy that is unconstitutional and that injures the plaintiff. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 223 (3d Cir. 2015); *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). Mr. Washington has not, however, alleged any particular policy that supposedly harmed him. For the reasons stated elsewhere in this and my earlier Opinion, Mr. Washington has also failed to plead an underlying constitutional injury that the County's policy could allegedly have caused. Accordingly, these allegations fail to state a claim.

In Count III, the second amended complaint alleges a conspiracy to violate civil rights, in violation of 42 U.S.C. §§ 1985 and 1983. The defendants allegedly "unlawfully conspir[ed] to cover up the use of official misconduct and filing false police reports." (2AC ¶ 15.) As noted above, the mere existence of a false police report, without more, does not constitute a constitutional deprivation. Understood as a conspiracy to accomplish a malicious prosecution, the allegation also fails for lack of an unconstitutional object. *See supra*. In addition, the allegations are conclusory in that they simply posit that the "detectives . . . came together and discussed possible methods of conjuring and manipulating the legal process . . . ." There are no supporting facts to suggest that such a meeting occurred. (*See* 2AC ¶ 6)

In Count IV, Mr. Washington asserts a claim for failure to intervene. (2AC ¶¶ 17–20) A police officer may incur liability under § 1983 if the officer "fails or refuses to intervene when a constitutional violation . . . takes place in his presence." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). No claim for failure to intervene to prevent a constitutional violation is stated here, however, because no underlying constitutional violation is pled. *See supra*.

Although no Count explicitly says so, Mr. Washington may intend to raise claims under New Jersey state law. The prefatory paragraph of the second amended complaint refers to "harassment, intentional infliction of emotional distress, negligence and negligent hiring and/or retention of incompetent, unqualified, unfit and assaultive employees." (2AC ¶ 1.) The allegation that defendants "maliciously and intentionally made false statements regarding the arrest of Plaintiff in police reports, statements to the prosecutor, and in court documents," although asserted in a constitutional context, might also be interpreted as a defamation claim. (2AC ¶ 22.)

As noted in the Court's prior screening opinion, the only potential basis for jurisdiction over such state-law claims would be supplemental jurisdiction pursuant to 28 U.S.C. § 1367. When a court has dismissed all claims over which it had original federal question jurisdiction, it has the discretion to decline to exercise supplemental jurisdiction over the remaining state-law claims. *See* 28 U.S.C. § 1367(c)(3). I did so in the earlier opinion, and will do so here. Because the federal claims are not substantial enough to survive the initial screening process, I will exercise my discretion to decline supplemental jurisdiction over any state-law claims.

## V. CONCLUSION

For the foregoing reasons, I find, upon screening under 28 U.S.C. §§ 1915(e) and 1915A, that Mr. Washington fails to state a federal claim in his second amended complaint. Accordingly, the federal claims will be dismissed without prejudice for failure to state a claim and I will decline to exercise supplemental jurisdiction over any state-law claims. An appropriate order follows.

DATED: February 6, 2019

KEVIN MCNULTY
United States District Judge

9